LEWIS R. MORGAN, Senior Circuit Judge,
dissenting:
I respectfully dissent from the opinion of the majority. While I agree that ordinarily a decision of the district court reversing and remanding an order of the bankruptcy court for the taking of further proceedings would fall within the “interlocutory order” concept and would not rise to the status of a final order, I would find the collateral order exception to that general rule applicable under the exceptional circumstances involved in this case.
Under the collateral order doctrine, as set forth in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), for a non-final order to be appealable to this court, that order must:
(1) be independent and easily separable from the substance of other claims in the action; (2) present a need to secure prompt review in order to protect important interests of any party; and (3) be examined in the light of practical, rather than narrowly technical, considerations.
In re Regency Woods Apartments, Ltd., 686 F.2d 899 (11th Cir.1982). These factors have been met to my satisfaction in this case. The propriety of the district court’s order of remand, which sets the procedural posture of the case, is clearly a matter separable and distinct from the merits of this bankruptcy action. Furthermore, this matter involves the aborted sale of a 318 unit apartment complex, with a selling price of 8.8 million dollars. Originally, the financing arrangements for that purchase were to expire on September 21, 1984, and Brookside has been obliged to forego those arrangements and to make continued arrangements beyond that date. When the *1520 issue of the propriety of the district court’s remand is isolated from the rest of the action and viewed from a practical perspective, I see nothing to be gained from awaiting review of this issue. Should Brookside ultimately prevail below, then this significant issue of the proper construction of provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 will evade review. Should TCL ultimately prevail below, then the issue of the propriety of the district court’s remand will return to this court with the excess baggage of another round of bankruptcy and district court proceedings having been conducted below. Yet the issue before the court — a purely legal issue as to the type of proceedings that must be conducted by the bankruptcy court in relation to a direction to sell property — will remain the same, and at least one more year will have been lost in relation to potentially unneeded litigation.
More importantly, however, I am concerned that this case raises an issue that cuts straight to the core of the new bankruptcy scheme enacted by the 1984 Bankruptcy Act and the ability of bankruptcy judges to expeditiously and efficiently conduct bankruptcy proceedings under that statutory authority. The district court here determined that the only relationship between Brookside’s motion to force TCL to sell it the property and the bankruptcy laws was TCL’s status as a federal bankrupt. Therefore,- the court described the matter as a complaint for specific performance, a non-core proceeding over which the bankruptcy court must hold adversary proceedings and issue proposed findings. See 28 U.S.C. § 157(c)(1) (bankruptcy judges may hear non-core matters that are related to a title 11 case, but proposed findings of fact and conclusions of law must be made for review by the district court, including de novo review of matters objected to); Bankruptcy Rule 7001(7) (an adversary proceeding is a proceeding in bankruptcy court “to obtain an injunction or other equitable relief...”). In my view, this position is an unrealistically narrow characterization of the entire context of the proceedings below.
First, the type of relief sought here by Brookside from the bankruptcy court clearly falls within any of a number of the non-exclusive definitions of “core” bankruptcy proceedings contained in the Act. See §§ 157(b)(2)(A) (“matters concerning the administration of the estate”); (E) (“orders to turn over property of the estate”); (N) (“orders approving the sale of property...”); (0) (“other proceedings affecting the liquidation of the assets of the estate ... ”). And second, TCL originally came to the bankruptcy court seeking the benefit and protection of the status of being a bankrupt debtor. As such, TCL could not sell its property without invoking the processes of the bankruptcy court, and therefore TCL subsequently sought the permission of that court to sell its primary asset. After repeated representations to that court as to the beneficial nature of the transaction and obtaining the necessary approval, TCL altered its position and sought to avoid the transaction, presumably because it at the last minute arranged a superior deal with another buyer. TCL simply should not be permitted to wear its bankrupt status on its sleeve in invoking the benefits of the bankruptcy process, but then shed its bankruptcy clothing when it seeks to avoid the effect of an order it originally requested and which was entered for its benefit. To find that the instant case involves anything but a core bankruptcy matter would be to ignore the statutory definition of such proceedings contained in § 157(b)(2) and to frustrate the necessary authority of bankruptcy courts not only to supervise estate proceeds under their control, but also to enforce their orders made in relation to those assets. Once it is recognized that an order by the bankruptcy court to enforce the sale is a “core” bankruptcy matter, the district court’s characterization of this matter as merely an equitable complaint falls by the wayside, as does any requirement for an adversary proceeding under Rule 7001(7).[1]
*1521 In sum, the issue of whether the bankruptcy court could direct TCL to sell the property in question pursuant to the procedures employed by that court has been pending since at least. September 19, 1984. Under the majority’s holding, determination of that issue must await another day, a day that may never come, or if it does, only after extensive proceedings in two lower courts that will not aid in our resolution of the issue. In light of the importance of this question, both to the individual litigants and to the proper functioning of the bankruptcy courts under the new Bankruptcy Act, I would hold the collateral order doctrine applicable, reverse the district court insofar as it held the proceeding in question to be a “non-core” proceeding and would affirm the order of the bankruptcy court directing the sale of the property to Brookside. I respectfully dissent.

. At any rate, it should be noted that the bankruptcy court here held two full days of hearings prior to issuing its order directing TCL to sell the property. Although TCL argues that it was entitled to a full adversary hearing, it has not given one concrete suggestion of how it would *1521 have proceeded differently or of how it was prejudiced by conducting this hearing as a contested matter rather than as an adversary proceeding. In this circumstance, I would be in-dined to find any alleged error to be harmless, and TCL has presented no authority to the contrary.